UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN GREGORY, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-214-GMB |
| | ) | |
| CITY OF TRUSSVILLE, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jonathan, Amy, and Gavin Gregory bring claims pursuant to 42 U.S.C. § 1983 and state law against the City of Trussville, Alabama ("Trussville"), Police Chief Eric Rush, Deputy Police Chief David Morrette, and Officers James McCool, Richard Lovell, Chad Jones, and Anthony Martin. Doc. 49.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 19.  Before the court is the Defendants' Motion to Dismiss Plaintiffs' Verified Amended Complaint Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).[1] Doc. 50.  The motion is fully briefed (Docs. 50–53, 55–

---

[1] Although the title of the motion references Federal Rule of Civil Procedure 12(b)(5) and the body states the amended complaint is due to be dismissed for insufficient service of process (Doc. 50), the briefs do not make any argument about the validity of service.  Accordingly, the court deems this argument to have been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

57, 60) and ripe for decision.  For the following reasons, the motion is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of all or some of the claims in a complaint if the allegations fail to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," which is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court assumes that the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that a plaintiff can prove facts she has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Assoc. Gen. Contractors of*

*Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## II.  STATEMENT OF FACTS

Early in the morning on February 22, 2022, Jonathan Gregory, his wife Amy, and his son Gavin "were suddenly awakened by a loud noise without any warning by a large contingent of Trussville Police officers who kicked in their front door at their home residence while purportedly serving a search warrant."[2] Doc. 49 at 5. Officers Jones, McCool, Lovell, and Martin knocked Jonathan Gregory to the ground as he tried to open the door, dislocating his left shoulder. Doc. 49 at 5, 35,

---

[2] The Gregorys allege that the "search warrant may be invalid because it was backdated, or the police may have altered [it] in some way." Doc. 49 at 8.

42.  The officers then dragged him out to the porch, cuffed him, and "threw him down eight steps onto the sidewalk and on the ground." Doc. 49 at 5–6; *see also* Doc. 49 at 35, 42.  While Jonathan was handcuffed on the ground, McCool "put his knee on Jonathan's neck" even though he begged "the officer to get off his neck to no avail." Doc. 46 at 6, 35–36, 43.  These actions "severely injured [Jonathan's] pelvis, injured his shoulder, knocked his tooth loose[,] and cracked several teeth," while also bruising and fracturing his neck in several places. Doc. 49 at 6.

Jones, McCool, Lovell, and Martin dragged Amy Gregory "out of her bedroom and handcuffed her in her pajamas." Doc. 49 at 36, 43.  "They knocked her to the floor" and "then took her to the front steps making her stand in the cold." Doc. 49 at 6, 36, 43.  Despite Jonathan's "pleading with the officers not to harm his wife because she has metal rods in her back and leg from a previous surgery," Amy "was dropped to the ground in handcuffs" and "was injured and has suffered constant pain from this trauma." Doc. 49 at 6, 36, 43.

Jones, McCool, Lovell, and Martin also went to Gavin Gregory's room, flashed "the laser scope lights of their assault rifles and guns in his eyes," and woke him from his sleep. Doc. 49 at 6, 36, 43.  They "yank[ed] him out of bed by his shoulder and thr[e]w him to the floor while screaming and yelling at him." Doc. 49 at 6–7, 36, 43.  They later "dr[u]g him out of the house in handcuffs" and threw him on the ground in the front yard. Doc. 49 at 7, 36, 43.

The four officers then "ransacked the house and destroyed furniture and other personal property that belonged" to the Gregory family. Doc. 49 at 7, 36.  They also forced Jonathan to open a safe that belonged to his brother and contained guns, jewelry, and money. Doc. 49 at 7.  Officers McCool, Martin, Jones, and Lovell "dumped all the contents of the safe out on the floor" and "destroyed jewelry that was in the safe by dumping it out on the floor[,] stepping on the jewelry[,] and crushing some of it." Doc. 49 at 7.  At some point during the search, "some gold coins and other jewelry went missing." Doc. 49 at 7.  The officers seized 16 guns, "all registered [and] some of which were antique registered guns which belonged to the extended Gregory family, not the Plaintiffs." Doc. 49 at 7–8.

The officers arrested Jonathan Gregory and took him to the Trussville City Jail. Doc. 49 at 8.  They charged him with the possession of firearms and a small amount of marijuana even though the marijuana belonged to Drew Thomas, who had been staying in the Gregorys' basement. Doc. 49 at 8.  Amy and Gavin Gregory were not arrested, taken into custody, or charged with a crime. Doc. 49 at 8.

"The guns, jewelry, gold coins, and money were never returned." Doc. 49 at 9.  The "items of personal property seized from their home were lost, stolen, or otherwise disposed of by members of the Trussville Police Department without Plaintiffs' knowledge or permission." Doc. 49 at 10.  And the complaint alleges that "it is the pattern and practice of the Trussville Police Department and/or drug task

5

force to illegally seize property of defendants on misdemeanor offenses and never file civil forfeiture proceedings or not include all seized property in the civil forfeiture proceeding." Doc. 49 at 10.

The Gregorys and other family members complained to the Trussville Police Department "but no action was taken." Doc. 49 at 9.  Since making the complaints, certain "members of the police department" have harassed the Gregorys. Doc. 49 at 10.  And "[b]ecause of the humiliation and indignities suffered by the Gregorys, they are hesitant to go into public places in and around the County of their residence." Doc. 49 at 10.

## III.  DISCUSSION

The complaint contains 21 counts grouped by defendant.  The first eight counts are stated against Trussville: (1) 14th and 5th Amendment violations under 42 U.S.C. § 1983; (2) conversion; (3) 4th Amendment violations for excessive force under § 1983; (4) a 4th Amendment violation for illegal search and seizure under § 1983; (5) negligent and/or wanton hiring, training, and supervision; (6) malicious prosecution; (7) defamation; and (8) outrage/intentional infliction of emotional distress. Doc. 49 at 11–24.  The next six counts are against Chief Rush and Deputy Chief Morrette: (9) negligent and wanton hiring, training, and supervision; (10) defamation; (11) conversion; (12) 14th and 5th Amendment violations under § 1983; (13) malicious prosecution; and (14) outrage/intentional infliction of

emotional distress. Doc. 49 at 24–32. The final set of claims are stated against Officers McCool, Lovell, Jones and Martin in their individual capacities: (15) 14th and 5th Amendment violations under § 1983; (16) conversion; (17) 4th Amendment violations for excessive force under § 1983; (18) a 4th Amendment violation for illegal search and seizure under § 1983; (19) malicious prosecution; (20) outrage/intentional infliction of emotional distress; and (21) assault and battery/excessive force. Doc. 49 at 32–44. In separate briefs, the defendants seek to dismiss the amended complaint in its entirety as a shotgun pleading, and also move to dismiss some, but not all, of the individual claims on separate grounds. *See* Docs. 51–53.

The court will begin with the shotgun pleading argument, then address the federal claims stated against each defendant, and end with a discussion of the state-law claims.

## A.   Shotgun Pleading

A complaint, answer, or counterclaim that fails to comply with certain specificity requirements of the Federal Rules of Civil Procedure—particularly Rules 8 and 10—is known as a shotgun pleading. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1320 (11th Cir. 2018). While there is no precise formula for a shotgun pleading, a complaint might earn this label if it (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and

immaterial facts" unconnected to a particular cause of action; (c) fails to divide

different claims into separate counts; or (d) alleges "multiple claims against multiple

defendants without specifying which of the defendants are responsible for which

acts or omissions, or which of the defendants the claim is brought against." *Weiland

v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). "The

unifying characteristic of all types of shotgun pleadings is that they fail to one degree

or another, and in one way or another, to give the defendants adequate notice of the

claims against them and the grounds upon which each claim rests." *Id*. at 1323. "At

the end of the day . . . the key question is whether the complaint includes enough

information to allow a defendant and the court to 'readily determine' if the complaint

states a plausible claim for relief." *Ray v. Gadson*, 2023 WL 7228933, at *4 (N.D.

Ala. Nov. 2, 2023) (citing *Weiland*, 792 F.3d at 1326).

Upon review of the amended complaint, the court disagrees with the

defendants' characterization that it is a shotgun pleading. While many of the

allegations are repetitive, conclusory, or immaterial, the federal rules do not require

precision in the drafting of complaints. The causes of action and factual allegations

here give adequate notice to the defendants of the factual basis for the Gregorys'

claims against them. *See Weiland*, 792 F.3d at 1323. And the amended complaint

does not allege "multiple claims against multiple defendants without specifying

which of the defendants are responsible," as the defendants argue. *Id.* at 1326.

Instead, the amended complaint groups the relevant defendants together and—while not perfect—allows for the grouped defendants to understand the claims stated against them. Accordingly, the motion to dismiss will be denied to the extent the defendants seek a dismissal of the amended complaint as a shotgun pleading.

## B.    Federal Claims

The Gregorys bring multiple federal claims against each set of defendants pursuant to 42 U.S.C. § 1983. Section 1983 creates a private right of action to vindicate violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Under the terms of the statute, "[e]very person who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (citation and internal quotation marks omitted).

### 1.    *Trussville (Counts 1, 3, and 4)*

To hold a governmental entity like the City of Trussville liable under § 1983, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The governmental entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta*, 485 F.3d

1130, 1145 (11th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694–95 (1978)).

The complaint fails to state a § 1983 claim against Trussville because the allegations do not establish an official policy or custom that caused a violation of the Gregorys' constitutional rights. Instead, the only relevant factual allegation in the amended complaint is the claim that "it is the pattern and practice of the Trussville Police Department and/or drug task force to illegally seize property of defendants on misdemeanor offenses and never file civil forfeiture proceedings or not include all seized property in the civil forfeiture proceeding." Doc. 49 at 10. This allegation is insufficient to state a claim.

The Gregorys must provide factual underpinnings for the legal conclusions in the amended complaint. They may not simply use "labels and conclusions and a formulistic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). For this reason, their bare allegations fall short of the pleading requirements. In other words, this single sentence does not establish that Trussville had a custom or policy that constituted deliberate indifference to the Gregorys' constitutional rights or that the policy or custom caused any alleged violations. Trussville's motion to dismiss the federal claims is due to be granted.

### 2.    Chief Rush and Deputy Chief Morrette (Count 12)

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and quotation omitted).   Indeed, to establish § 1983 liability, a plaintiff "must instead allege that the supervisor, through his own actions, violated the Constitution." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022); *Hartley*, 193 F.3d at 1269.   Therefore, when a supervisor did not personally participate in the alleged constitutional violation, the plaintiff must demonstrate a causal connection between the supervisor's actions or inactions and the alleged misconduct. *Iqbal*, 556 U.S. at 676; *Ingram*, 30 F.4th at 1254; *Hartley*, 193 F.3d at 1269.  "A causal connection may be established when: (1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).  This is an "extremely rigorous" standard. *Piazza v. Jefferson County*, 923 F.3d 947, 957 (11th Cir. 2019).

The only federal claim against Rush and Morrette is for a violation of the

Takings Clause of the 5th Amendment. Doc. 49 at 28–29. Specifically, the Gregorys claim that Rush and Morrette "directed the actions of the members of the City of Trussville police department . . . who participated in the February 22, 2022, raid on the [Gregorys'] home." Doc. 49 at 28. The amended complaint goes on to allege that Jones, McCool, Lovell, and Martin took jewelry, cash, guns, and other property from the Gregory home "with the full knowledge and under the direction of Defendants Rush and Morrette." Doc. 49 at 29. Finally, the Gregorys allege that "[n]ot all of the property has been returned to them" and that "[t]hese actions or omissions took place with the full knowledge and supervision of Defendants Rush and Morrette." Doc. 49 at 29.

There are no allegations in the amended complaint that Rush or Morrette personally participated in the alleged taking of the Gregorys' property, so the Gregorys must establish a causal connection between the supervisor's actions or inactions and the alleged misconduct. *Mathews*, 480 F.3d at 1270. As best the court can tell, the Gregorys are attempting to establish that causal connection using the third option above—that is, by showing facts that imply the supervisors directed their subordinates to act unlawfully. The allegations, however, are insufficient.

The Gregorys rely on generic, conclusory statements that Rush and Morrette had "full knowledge" of and directed the officers' actions, or that the officers were under the supervision of Rush and Morette. But the "extremely rigorous" standard

for supervisory liability requires the Gregorys to have factual support for the inference that Rush and Morrette directed the officers to act unlawfully or knew that the officers would act unlawfully and failed to stop them. *See Piazza*, 923 F.3d at 95. The amended complaint does not contain any specific factual allegations to support its sweeping conclusions. The Eleventh Circuit has made clear that the court does not need to accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd., v. Jaharis*, 297 F. 3d. 1182, 1188 (11th Cir. 2002). For this reason, the court will grant the motion to dismiss the federal claims against Rush and Morrette.

### 3.    *Officers McCool, Lovell, Jones, and Martin (Counts 17 and 18)*

The officers claim that they are entitled to qualified immunity from the federal claims asserted against them in the amended complaint. Doc. 53 at 12–13. Qualified immunity protects government officials from civil liability as long as they were acting within the scope of their discretionary authority and their conduct does not violate the plaintiff's clearly established federal constitutional rights. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "The defense of qualified immunity aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Taylor v. Taylor*, 649 F. App'x 737, 742 (11th Cir. 2016). The burden

is on the defendant to show that he was operating within his discretionary authority, but then the burden shifts to the plaintiff to show that qualified immunity should not apply. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

The courts within the Eleventh Circuit ordinarily "conduct a two-step inquiry to decide whether qualified immunity should be granted: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[?]; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, . . . [was] the right . . . clearly established[?]" *Shuford v. Conway*, 666 F. App'x 811, 815 (11th Cir. 2016). "Both elements must be satisfied for an official to lose qualified immunity." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

Based on the limited briefing before the court, an analysis of qualified immunity is not appropriate at this time. Other than setting out boilerplate law, the officers' only substantive argument about immunity is the claim that "[i]t is undisputed by the clear language of plaintiffs' Verified Amended Complaint that all the Trussville Police Officers were at all times acting under the color of law and within the line and scope of their employment as a law enforcement officer for the town of Trussville, and in fact plaintiffs concede as much in their Complaint." Doc. 53 at 13. The court assumes that this statement is the officers' attempt to establish that they were acting within their discretionary authority and to shift the

14

burden to the Gregorys to show that immunity should not apply.

But in addressing the alleged constitutional violations, the officers simply conclude that "each individual Police Officer defendant is duly entitled to qualified immunity against these purported federal constitutional violation allegations and the suit itself." Doc. 53 at 13.  This conclusory argument does not address the factual allegations surrounding the alleged constitutional violations in any manner.  There is no discussion of whether the officers' actions amount to a taking, excessive force, or unlawful search and seizure.  Most significantly, to survive a motion to dismiss based on qualified immunity, a complaint must allege the violation of a clearly established constitutional right. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  While not a model of pleading, the amended complaint has done so.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . . Rather, the onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted).  This is true even when a defendant asserts that he is entitled to qualified immunity. *See Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014) (holding that the district court was not required to address a "single, passing reference" to a ground for qualified immunity where that reference was "unaccompanied by any discussion or elaboration").  The defendants' argument

for qualified immunity is brief and perfunctory. The motion to dismiss the federal claims against these officers based on qualified immunity will be denied.

## C.    State-Law Claims

### 1.    *Peace Officer Immunity*

McCool, Lovell, Jones, and Martin contend that they are entitled to peace officer immunity for all of the state-law claims in the amended complaint. Doc. 53 at 14–16. Peace officer immunity derives from Alabama Code § 6-5-338(a), which provides in pertinent part that "[e]very peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." The Alabama Supreme Court has explained that "[t]he restatement of State-agent immunity . . . in *Ex parte Cranman* . . . governs the determination of whether a peace officer is entitled to immunity under § 6–5–338(a)." *Ex parte City of Homewood*, 231 So. 3d 1082, 1086 (Ala. 2017) (internal quotations and citations omitted). That restatement is as follows:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . . .

> Notwithstanding . . . a State agent shall not be immune from civil liability in his or her personal capacity (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the

purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000), *modified by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006).

The peace officer immunity analysis is a burden shifting process. *Stryker v. City of Homewood*, 2017 WL 3191097, at *16 (N.D. Ala. July 27, 2017). A peace officer asserting immunity bears the initial burden of demonstrating that the plaintiff's claims arise from a function that would entitle him to immunity. *Ex parte City of Homewood*, 231 So. 3d at 1087. To carry that burden, peace officers "must establish (1) that they were peace officers (2) performing law-enforcement duties at the time of the accident and (3) exercising judgment and discretion." *Id.* "If they can do so, the burden then shifts to [the plaintiff] to show that one of the *Cranman* exceptions applies." *Id*.

From the face of the amended complaint, the officers have made all three necessary showings. First, as Trussville police officers, they were peace officers at the time of the arrest, use of force, and seizure. *See Stryker*, 2017 WL 3191097, at *17. Second, they were performing law-enforcement duties in executing the search warrant, arresting Jonathan Gregory, and seizing items from his home. *See id*.; *see also Williams v. City of Dothan, Ala*., 2015 WL 4635264, at *3 (M.D. Ala. Aug. 3, 2015). Finally, they were exercising judgment and discretion in effectuating the

17

arrest. *See Swan v. City of Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005) ("[A]rrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment."); *see also Walker v. City of Huntsville*, 62 So. 3d 474, 498 (Ala. 2010) (holding that police officers sued for "failure to obtain medical treatment" for an arrestee were "exercising judgment with respect to [the plaintiff's] arrest and performing a discretionary function in the line and scope of their law-enforcement duties within the meaning of § 6-5-338").

The burden therefore shifts to the Gregorys to identify factual allegations that plausibly demonstrate an exception to this immunity. *Ex parte City of Homewood*, 231 So. 3d at 1087. When viewed in the light most favorable to the Gregorys, the factual allegations of the amended complaint at least plausibly support the conclusion that the officers committed the allegedly tortious conduct willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law. For example, the amended complaint alleges that the officers dislocated Jonathan's left shoulder, threw him down eight steps onto the sidewalk while handcuffed, and caused injuries to his shoulder, pelvis, and teeth. Doc. 49 at 42. The amended complaint also claims that an officer put his knee on Jonathan's neck after he was handcuffed and on the ground. Doc. 49 at 43. For this reason, the motion to dismiss the state-law claims against the officers in their individual capacities on the basis of peace officer immunity will be denied at this

time.

Additionally, prudential considerations weigh against a dismissal based on peace officer immunity at such an early stage in the proceedings.  The Alabama Supreme Court has recognized that a "motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and . . . normally the determination as to the exercise of such a defense should be reserved until the summary judgment stage, following appropriate discovery." *Ex parte Bitel*, 45 So. 3d 1252, 1255 (Ala. 2010) (quoting *Ex parte Ala. Dep't of Mental Health*, 837 So. 2d 808, 813–14 (Ala. 2002)).  Peace officer immunity's burden shifting scheme is necessarily a fact-intensive inquiry that, in most cases, will require a reviewing court to go beyond the four corners of the complaint.  Alabama law thus contemplates that summary judgment proceedings are more appropriate for an immunity defense except in the most obvious circumstances. *See Ex parte Bitel*, 45 So. 3d at 1255.

### 2. *Conversion (Counts 2, 11, and 16)*

The amended complaint brings claims for conversion against all six defendants.  To establish a claim of conversion under Alabama law, a plaintiff must show "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Ex parte Anderson*, 867 So. 2d 1125, 1129 (Ala. 2003) (citations omitted).  And "the plaintiff must establish that the defendant converted specific personal

property to the defendant's own use and beneficial enjoyment." *Huntsville Golf Dev., Inc. v. Ratcliff, Inc*., 646 So. 2d 1334, 1336 (Ala. 1994).

The amended complaint fails to state a claim for conversion. There are no specific factual allegations that any of the defendants "converted specific personal property to the defendant's own use and beneficial enjoyment." *Id*. Instead, the allegations merely state that: Trussville, Rush, and Morrette "seized money and other property including guns[,] . . . jewelry" and gold coins and "converted the money seized . . . for the use and possession of the City for over a year"; and Jones, McCool, Lovell, and Martin "have yet to return some of the Plaintiffs' property, including cash, jewelry, guns, power equipment, and a gold coin collection" and "converted the Plaintiffs' missing property for their own use." Doc. 49 at 13, 14, 27, 34. These allegations amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Without any factual allegations about how any of the defendants converted the property for their own use and beneficial enjoyment, the amended complaint fails to state a claim for conversion against any defendant. These claims are due to be dismissed.

### 3.    *Negligent Hiring, Training, Supervision (Counts 5 and 9)*

The Gregorys bring claims for negligent hiring, training, and supervision against Trussville, Rush, and Morrette. These defendants argue that the claims

should be dismissed because there is no cause of action under Alabama law actionable against an individual supervisor for the tort of wrongful hiring, training, or supervision.  The court agrees.

Alabama Code § 11-47-190 permits a plaintiff to sue a municipality for the negligence of its employees: "No city or town shall be liable for damages for injury done to or wrong suffered by any person . . . , unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty[.]"  Accordingly,  "[m]unicipal liability under Section 11-47-190 is based on the doctrine of respondeat superior." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (citing *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995)).  Before a city can be liable under that doctrine, one or more of its employees must be liable for a tort. *Id.*

Under Alabama law, the tort of negligent supervision or training of an officer requires the existence of a master-servant relationship between the officer and his supervisor. *See Ott*, 169 F. Supp. 2d at 1314.  As a result, a plaintiff who seeks to sue a municipality for negligent training or supervision "must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate"—in this instance, the police officer accused of misconduct. *Id.*  However, a supervisor ordinarily "is not the master of a

subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *Ott*, 169 F. Supp. 2d at 1314 (citing *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 806 (Ala. 2000); *Hauseman v. Univ. of Ala. Health Servs. Found*., 793 So. 2d 730, 732 (Ala. 2000)).  Thus, as in *Ott*, *id.*, this court is "satisfied that no such cause of action exists" for Rush and Morrette, and thus there can be no such cause of action against Trussville.

Even assuming the presence of a master-servant relationship, employer liability for negligent supervision or training also "requires, among other elements, proof of the employer's actual or constructive awareness of the employee's incompetency." *Ott*, 169 F. Supp. 2d at 1315 (citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1002 (Ala. 1993), *abrogated on other grounds by statute as stated in Horton Homes, Inc. v. Brooks*, 832 So. 2d 44, 57 (Ala. 2001)).  The amended complaint does not include either element.  There are no allegations that Chief Rush or Deputy Chief Morrette had actual or constructive awareness of the officers' alleged incompetence.  Accordingly, these claims must be dismissed.

### 4.    *Defamation (Counts 7 and 10)*

The Gregorys assert claims for defamation against Trussville, Chief Rush, and Deputy Chief Morrette.  To establish a claim for defamation under Alabama law, a plaintiff must prove: "(1) a false and defamatory statement concerning the plaintiff;

(2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989).

The amended complaint does not state a claim for defamation because it does not identify or explain the statements made by Trussville, Rush, or Morrette. The only relevant allegations (which are identical against each defendant) are that the defendants "falsely accused Plaintiffs of hoarding illegal guns and drugs at their home" and that this "untrue accusation caused the Plaintiffs injury to their reputation." Doc. 49 at 22, 26. There are no facts about the form of these accusations, which defendants made the statements, how they were communicated to a third party and when, and why the plaintiffs believe the defendants were negligent in making the statements. In this light, the defamation allegations amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Without sufficient factual allegations, the defendants do not have adequate notice of the defamation claims, which must be dismissed.

### 5. *Malicious Prosecution (Counts 6 and 13)*

The Gregorys assert claims for malicious prosecution against Trussville,

Rush, and Morrette. To establish a federal claim for malicious prosecution, the Gregorys must prove both "a violation of [their] Fourth Amendment right[s] to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted). Under the common-law elements of malicious prosecution, they must prove that the defendants "instituted or continued" a criminal prosecution against them, "with malice and without probable cause," that terminated in their favor and caused damage to them. *Id*. (internal quotation marks omitted).

At the outset, the amended complaint states that Amy Gregory and Gavin Gregory have not been charged with a crime (Doc. 49 at 8), so they cannot maintain a claim for malicious prosecution. As for Jonathan Gregory, the compliant does not show that a criminal prosecution terminated in his favor. To the contrary, the Gregorys' brief admits that "Jonathan Gregory's criminal charges are still pending at this time." Doc. 57 at 3 n.3. The pendency of a criminal proceeding prevents a claim for malicious prosecution at this time. Therefore, the motion to dismiss the malicious prosecution claims is due to be granted without prejudice.

### 6.    *Outrage (Counts 8, 14, and 20)*

In a footnote in their opposition brief, the Gregorys state that they are "no longer asserting a claim for outrage in this case against Defendant City of Trussville and [have] abandoned that claim." Doc. 55 at 1 n.2. There is no similar assertion in

their other briefs, so the court assumes they are maintaining their claims for outrage against the individual defendants. Even so, these claims fail.

In Alabama, outrage is another name for the tort of intentional infliction of emotional distress. There is a tripartite test to prove the tort. "The plaintiff must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).

This is a high bar, and the only consistently recognized categories of actionable conduct exist "in the family-burial context . . . , [when] barbaric methods [are] employed to coerce an insurance settlement . . . and [in cases of] egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). Although the tort is not explicitly cabined to those three categories, the action in question must be at least as outrage-inducing as, for example, "a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Id.* (describing the facts of *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011)). The bottom line is that this tort is viable "only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and

utterly intolerable in a civilized society." *Id*.

The factual allegations here do not rise to the level of outrageous conduct for the plaintiffs to sustain a cause of action for outrage.  There is no allegation of conduct that goes "beyond all possible bounds of decency" and is "atrocious and utterly intolerable." *Id*.  Instead, the amended complaint consists of garden variety allegations of force, seizure, and the taking of property, among other things. The claims for outrage are due for dismissal.

## D.    Leave to Amend

Although many of the allegations of the complaint are insufficient, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted).  Where a more carefully drafted pleading might state a viable claim, a district court should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*.

The Gregorys have already had one opportunity to amend in the face of a motion to dismiss, albeit before the court resolved that motion.  Separately, the court also ordered an amendment to remove any reference to the Ring video camera.  For this reason, the amended complaint is essentially the third iteration of the original complaint.  Even so, the court will permit the Gregorys one last opportunity to file a second amended complaint to attempt to correct the deficiencies identified above now that the court, for the first time, has analyzed their compliant.  However, the court finds that it would be futile at this time to attempt to amend the malicious prosecution claim since the prosecution of the charges remains pending against Jonathan Gregoy and no charges were filed against Amy or Gavin Gregory.  The court will entertain a motion to amend in the future if the state court resolves the charges in Jonathan Gregory's favor.

## IV. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss (Doc. 50) is GRANTED in part and DENIED in part as follows:

1.    All claims against The City of Trussville are DISMISSED;

2.    All claims against Rush and Morrette are DISMISSED; and

3.    The claims for conversion, malicious prosecution, and outrage against Jones, McCool, Lovell, and Martin are DISMISSED;

4.    The federal claims and the state-law claim for assault and battery

against Jones, McCool, Lovell, and Martin remain pending.

The Gregorys are ORDERED to file a third amended complaint consistent with this Memorandum Opinion and Order no later than **February 27, 2025.** The amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim without reincorporating allegations and claims from any other pleading.

Additionally, the parties are ORDERED to file their report consistent with Federal Rule of Civil Procedure 26 and the court's orders of July 2, 2024, and October 16, 2024 (Doc. 28 & 48), on or before **February 27, 2025**. If the parties fail to file their report, the court will unilaterally issue a scheduling order.

DONE and ORDERED on February 13, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE